**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **TEXTRON AVIATION INC.,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 6:25-cv-01088-HLT-ADM** |
| **WILLIAM TSUMPES, et al.,** | |
| **Defendants.** | |

**<u>MEMORANDUM AND ORDER</u>**

This case stems from a failed deal for an aircraft. Plaintiff Textron Aviation Inc. sued Defendants William Tsumpes and Seaguard Aviation, LLC for breach of contract and declaratory relief. Textron seeks liquidated damages based on Defendants' failure to complete the deal. Defendants move to dismiss. Doc. 42.[1] They dispute personal jurisdiction and the existence of an enforceable contract. The Court denies the motion. Defendants purposefully availed themselves of this forum when they came to Kansas to execute the deal and help design the aircraft. And the Court can't resolve the question of whether the contract is binding at the pleading stage. Textron has plausibly stated its claims.

Defendants also move to strike Textron's withdrawal of a demand for a jury trial. Doc. 44. Given the open question in this case about the enforceability of the contract (which includes a jury waiver), the propriety of the jury demand is not clear. This matter therefore can't be decided at the pleading stage. Defendants will not be prejudiced by Textron's withdrawal of the demand. The Court therefore denies the motion.

---

[1] Defendants request oral argument. The Court denies that request because it would not materially assist the Court in deciding the motions.

## I.   BACKGROUND[2]

Textron is an aircraft manufacturer. Doc. 31 at ¶ 1. Tsumpes is an individual. Seaguard is a limited liability company whose members are Tsumpes and another entity whose sole member is also Tsumpes. *Id.* ¶¶ 2-3. Tsumpes is a Texas resident, and Seaguard is a Montana limited liability company. *Id.*

Textron entered into an Aircraft Purchase Agreement ("APA") with Tsumpes for the purchase of an aircraft. *Id.* ¶ 8. Part 1 of the APA identified the purchaser as "William Tsumpes an individual." *Id*. Tsumpes signed the APA and noted his title was "CEO." *Id.* ¶ 8. Tsumpes made the first deposit of $250,000 on May 1, 2024. *Id.* ¶ 11. On May 23, 2024, Tsumpes traveled to Textron's factory in Kansas to make interior and exterior design choices for the aircraft. *Id.* ¶ 12. During that visit, Tsumpes wet signed and dated the APA.[3] *Id.* On May 24, 2024, Tsumpes made a second deposit of $500,000. *Id.* ¶ 13. In June and July 2024, Tsumpes and Textron's customer account manager corresponded about the interior design of the aircraft. *Id.* ¶ 14.

The APA contains a forum selection clause stating that "any dispute arising under, out of or related in any way to this Agreement, the legal relationship between Seller and Purchaser, or the transaction that is the subject matter of this Agreement" will be governed by Kansas law and will be adjudicated in Kansas federal court or Kansas state court. Doc. 24 at 12. It also states that the parties consent to personal jurisdiction of those courts. *Id.*; *see also* Doc. 31 at ¶ 5. Article 6(b)

---

[2]   The following facts are taken from the well-pleaded allegations in the amended complaint and are presumed to be true for purposes of this order. *See* Doc. 31. The APA has been submitted as an exhibit, *see* Doc. 24, and both parties agree it is properly considered. Doc. 43 at 2 n.1; Doc. 49 at 1 n.1; *see also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.").

[3]   The APA signature page has the date of Tsumpes's signature as April 30, 2024. Doc. 24 at 15. It's unclear if this discrepancy arose from electronic versus wet signatures.

states that if the purchaser fails to take delivery of the aircraft or fails to perform obligations under the APA, it will be considered a "pre-delivery breach" and Textron will be entitled to liquidated damages equal to all paid deposits as well as all remaining deposits due. Doc. 31 at ¶ 9; *see also* Doc. 24 at 10.

The APA was first amended on July 29, 2024. Doc. 31 at ¶ 15. Amendment No. 1 made the third deposit of $750,000 due by September 15, 2024. *Id.* Tsumpes signed the amendment, again using the title of CEO, but with no reference to Seaguard. *Id.*

Tsumpes did not make the third deposit of $750,000 by September 15, 2024. *Id.* ¶ 17. On September 25, 2024, Tsumpes acknowledged notice of the past due deposit. *Id.* ¶ 18. On September 26, 2024, Textron sent Tsumpes a Default Notice with a cure deadline of close of business the next day. *Id.* Tsumpes responded and proposed installment payments for the remainder of the deposit. *Id.* The proposed installment dates and amounts were $350,000 due on September 27, 2024, which Tsumpes paid on that date, and $400,000 due on November 25, 2024. *Id.* The parties memorialized these changes in Amendment No. 2. *Id.* Tsumpes signed Amendment No. 2 on October 31, 2024, and listed his title as "Himself." *Id.* ¶ 20.

On that same day, the parties also executed Amendment No. 3. *Id.* ¶ 21. Amendment No. 3 revised the sales allowance, updated the interior and exterior schemes, added various features, and added interior and exterior renderings. *Id.* Tsumpes signed Amendment No. 3 and listed his title as "Himself." *Id.*

The final $400,000 deposit was not paid by November 25, 2024. *Id.* ¶ 22. Textron sent a past due notice to Tsumpes on December 11, 2024, who requested an extension until January 24, 2025. *Id.* Textron accommodated this request. *Id.* Up until this point, all dealings were between

Textron and Tsumpes individually. *Id.* ¶ 24. None of Tsumpes's correspondence included a signature block for Seaguard. *Id.*

On February 25, 2025, Tsumpes traveled to Textron's factory in Wichita to execute Amendment No. 4, in which Tsumpes assigned the APA to Seaguard. *Id.* ¶ 25. By that assignment, Seaguard agreed to assume all rights, liabilities, and obligations of Tsumpes under the APA. *Id.* Article 3 of Assignment No. 4 stated:

> If Assignee [Seaguard] does not fully and completely perform all obligations of Assignor [Tsumpes] under the Agreement [APA], then, in accordance with the terms and conditions of the Agreement, Assignor and Assignee are both jointly and severally responsible for any and all damages arising from any breach of the Agreement and Seller [Textron] may pursue both or either party for full satisfaction.

Doc. 24 at 26. Tsumpes signed Amendment No. 4 on February 25, 2025, using the title "Himself," and he also signed for Seaguard as "Member." Doc. 31 at ¶ 26. Tsumpes was physically present in Kansas when he signed. *Id.*

Amendment No. 5 was also executed on February 25, 2025. *Id.* ¶ 27. This amendment reflected that the remaining $400,000 deposit was due by January 24, 2025. *Id.* Amendment No. 5 was signed by Tsumpes on behalf of Seaguard. *Id.* ¶ 28. The $400,000 deposit had not been paid on January 24, 2025. *Id.* ¶ 29. But Textron agreed to accept the final deposit at the time of delivery, along with the remaining balance due. *Id.*

The aircraft delivery date under the APA was April 30, 2025. *Id.* ¶ 31.[4] Tsumpes and Seaguard told Textron they would not take delivery of the aircraft on that date. *Id.* ¶ 32. Textron has fully performed its obligations under the APA, including all five amendments and presenting

---

[4]    Defendants argue that the "Ready for Delivery" date in the APA and the "Delivery Date" are listed as the "Fourth Quarter of 2024." Doc. 43 at 3; *see also* Doc. 24 at 4.

the aircraft for delivery as defined in the APA. *Id.* ¶ 34. Based on this, Textron contends Tsumpes and Seaguard are in pre-delivery breach under the APA. *Id.* ¶ 33.

Textron sues for one count of breach of contract, alleging that Tsumpes and Seaguard have breached the APA by failing to make the necessary deposits and by failing to take delivery of the aircraft by the delivery date. *Id.* ¶¶ 35-39. It seeks $1,500,000 in liquidated damages as set out in Article 6(b) of the APA, which represents the $1,100,000 already paid to Textron, and the $400,000 still outstanding. *Id.* ¶ 39.

Textron also seeks declaratory judgment that the APA and its amendments constitute a legally binding contract between the parties, and a declaration that Tsumpes and Seaguard must hold Textron harmless under various provisions in the APA, that Tsumpes and Seaguard are jointly and severally liable to pay the remaining $400,000 deposit, and that Textron is entitled to retain the $1,100,000 already paid. *Id.* ¶¶ 40-42.

## II.    STANDARD

Defendants move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim. The Court discusses both standards.

A motion under Rule 12(b)(2) challenges personal jurisdiction over a defendant. A plaintiff has the burden of showing that personal jurisdiction exists and must make a prima facie showing to overcome a Rule 12(b)(2) motion. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). But the burden is light at the pleading stage. *Id.* The court accepts as true all well-pleaded jurisdictional allegations unless they have been controverted by a defendant through an affidavit or other evidence. *Id.* If there are disputed facts, however, the court must resolve them in the plaintiffs' favor and will consider the plaintiff's "prima facie showing . . . sufficient

notwithstanding the contrary presentation by the moving party." *Id.* (internal quotations and citation omitted).

A complaint survives a Rule 12(b)(6) motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). A claim is plausible if there is sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation and citation omitted). A court must accept as true all well-pleaded allegations in the complaint, but it does not accept legal conclusions or conclusory statements. *Id.* at 678-79.

## III.    ANALYSIS

### A.    Personal Jurisdiction

Defendants argue Textron fails to establish personal jurisdiction because the APA is non-binding and therefore its forum selection clause is unenforceable against either Tsumpes or Seaguard. They also argue that there is no general personal jurisdiction and that Textron has failed to establish specific personal jurisdiction over Tsumpes. *See* Doc. 43 at 6-11. The Court does not reach Defendants' arguments about whether the APA is binding (and therefore whether the forum selection clause applies) because it finds that Textron has made a prima facie showing of specific personal jurisdiction as to both Tsumpes and Seaguard regardless of the applicability of the APA.

To establish personal jurisdiction over a defendant, a plaintiff must satisfy both the state long-arm statute and constitutional due process. *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th

Cir. 2006). The Kansas long-arm statute reaches as far as federal due process will allow, so the issue is narrowed to whether assertion of personal jurisdiction over the defendant would violate due process. *See OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090 (10th Cir. 1998). Due process allows a federal court sitting in diversity to exercise personal jurisdiction over a non-resident defendant if there exists "minimum contacts" between the defendant and the forum state. *See World-Wide Volkswagen, Co. v. Woodson*, 444 U.S. 286, 291 (1980).

As relevant here, minimum contacts can be met by showing "specific" personal jurisdiction exists. *OMI Holdings*, 149 F.3d at 1090-91.[5] Specific personal jurisdiction has two requirements. First, the defendant must purposefully direct its activities at residents of the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). In contract cases, this is typically referred to as purposeful availment, meaning the defendant purposefully availed "itself of the privilege of conducting activities or consummating a transaction in the forum state." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008). The second element of specific personal jurisdiction is that the suit must arise out of the actions connecting the defendant with the forum. *Burger King Corp.*, 471 U.S. at 472-73.[6]

### 1. Tsumpes

Textron must first make a prima facie showing that Tsumpes directed activities at the forum. The amended complaint alleges that Tsumpes entered the APA with Textron, which identified him as the purchaser in his individual capacity. Tsumpes traveled to Kansas several times regarding the purchase of the aircraft, paid several deposits, and signed some amendments

---

[5]  Textron agrees Defendants are not subject to general personal jurisdiction. Doc. 49 at 2 n.2.

[6]  If these requirements are both satisfied, a defendant can still argue that exercising personal jurisdiction would violate traditional notions of fair play and substantial justice. *OMI Holdings*, 149 F.3d at 1091. Defendants do not make that challenge here.

before the APA was formally assigned to Seaguard. The focus of this case is the APA, or at the very least, the failed aircraft purchase. Textron alleges breach of contract and seeks declaratory judgment requiring Defendants to comply with the terms of the APA.

Defendants' motion concedes these contacts with Kansas did occur. *See* Doc. 43 at 9-10 (agreeing that "telephone calls, correspondence, and visits to inspect the Aircraft did occur"). And they don't argue that these contacts would be insufficient in ordinary cases to satisfy specific personal jurisdiction. But they argue that Tsumpes made those contacts "exclusively as an agent of Seaguard" and that those contacts "cannot be counted as [Tsumpes's] personal contacts with the forum." *Id.* Thus, Defendants contend the "fiduciary shield doctrine" protects Tsumpes's contacts because he was acting on behalf of Seaguard. *Id.* at 10.

The fiduciary shield doctrine protects "individual corporate officers . . . where they have no personal contacts, independent of their representative contacts, with the forum and where there is no factual basis to pierce the corporate veil." *Caldwell-Baker Co. v. S. Ill. Railcar Co.*, 225 F. Supp. 2d 1243, 1262 (D. Kan. 2002) (internal quotation and citation omitted).[7] The actions of an individual acting as a corporate officer do not create personal jurisdiction even if there is personal jurisdiction over the corporation for which he was working. *Id.* Rather, specific personal jurisdiction over the individual "must be based on their personal, not representative, contacts with the forum." *Id.* (internal quotation and citation omitted).

---

[7] To the extent there is a dispute about whether the fiduciary shield doctrine applies in Kansas, *see JCM 082763, LLC v. Deterding*, 2016 WL 234158, at *5 (D. Kan. 2016); *Neuer v. Dental Res. Sys., Inc.*, 2015 WL 4634044, at *5 (D. Kan. 2015); *Fotouhi v. Mobile RF Sols., Inc.*, 2015 WL 3397205, at *2-3 (D. Kan. 2015), the Court need not resolve that dispute here. As discussed, the Court finds personal jurisdiction extends to Tsumpes based on his contacts with Kansas as an individual.

Defendants rely primarily on Tsumpes's declaration to assert that all contacts Tsumpes had with Textron were as Seaguard's representative. Doc. 43 at 10.[8] They also point to his use of the title "CEO" at times when he signed the APA, as well as one reference to Seaguard when he signed. Textron disputes that Tsumpes acted only in a representative capacity and therefore the fiduciary shield doctrine does not apply. Textron notes that Tsumpes was originally the named purchaser under the APA specifically in his individual capacity, often signed and communicated without reference to Seaguard, and made multiple contacts with the forum about the aircraft purchase and the APA before it was assigned to Seaguard. Doc. 49 at 9-10.

Textron has met its burden of establishing a prima facie case that specific personal jurisdiction exists against Tsumpes. Defendants do not dispute that the contacts at issue suffice to satisfy the minimum contacts standard. They only argue that those contacts were made based solely in Tsumpes's representative capacity. But the APA sufficiently controverts this contention.[9] The APA lists Tsumpes, "an individual," as the purchaser. Doc. 24 at 4. Tsumpes repeatedly signed documents without reference to Seaguard, and sometimes only as "Himself." *Id.* at 15, 19, 23. Contrast this with the times Tsumpes signed for Seaguard as "Member," which came only <u>after</u>

---

[8]    Tsumpes's declaration states that he is the CEO of Seaguard. Doc. 45-1 at 2. He has made multiple purchases of aircrafts for Seaguard and does so to take advantage of federal tax provisions that would not be available if he purchased them personally. *Id.* at 3. Tsumpes has purchased other aircrafts from Textron on behalf of Seaguard. *See id.* at 4. Textron was aware of Tsumpes's relationship to Seaguard. *Id.* at 5. When the opportunity to purchase the subject aircraft came up, Textron offered it to Tsumpes but only gave him five minutes to review the APA. *Id.* at 6. Tsumpes quickly electronically signed it without reviewing it for accuracy, and he did not realize his name was listed as the purchaser, rather than Seaguard. *Id.* When Tsumpes later signed the End User Certificate of the APA, he signed and noted he was CEO of Seaguard. *Id.* The declaration says the deposit payments were made by Seaguard. *Id.* at 6-7, 9. Textron sent amendments to Tsumpes with him incorrectly listed as purchaser. *Id.* at 7. Tsumpes claims the APA was at all times understood to be executed in the name of Seaguard to take advantage of the tax benefits, and Textron was aware of this. *Id.* at 8. In October 2024, Tsumpes reviewed a printed copy of the APA and discovered that it referred to him personally as the purchaser. *Id.* He notified Textron. *Id.* The parties then agreed to amend the APA to designate Seaguard as the purchaser. *Id.* at 8-9. Tsumpes maintains that his visits to Kansas and all communications with Textron were solely as representative of Seaguard. *Id.* at 9-11.

[9]    This is true regardless of whether the APA is an enforceable contract. Even if it is not enforceable, the existence of the APA, its identification of Tsumpes as the purchaser in his individual capacity, and his signatures demonstrate his contacts with Kansas and his purposeful availment of this forum.

9

the assignment of the APA from Tsumpes to Seaguard. *Id.* at 26-27. Defendants contend that listing Tsumpes as the purchaser was just a "mistake." Doc. 53 at 4. But at this stage, disputed questions of fact must be resolved in Textron's favor. *Wenz*, 55 F.3d at 1505. Accepting Textron's version of events, it has made a prima facie case of specific personal jurisdiction against Tsumpes.

### 2. Seaguard

Defendants do not argue that specific personal jurisdiction does not exist as to Seaguard. They generally don't dispute that the contacts with the forum in executing the APA would be sufficient minimum contacts. And, as noted above, their position is that those contacts were all on behalf of Seaguard. Given this, the Court finds Textron has made a prima facie showing of specific personal jurisdiction against Seaguard.

Defendants' motion to dismiss for lack of personal jurisdiction is denied.

### B. Failure to State a Claim

Defendants next argue that the amended complaint should be dismissed because the APA was never binding and because Textron did not plead performance. They also contend the declaratory judgment claim against Tsumpes fails because he doesn't owe any continuing obligations under the APA after the assignment to Seaguard.

### 1. APA Not Binding

Defendants first argue that Textron fails to state a claim for breach of contract. "The elements for a breach of contract claim are: (1) the existence of a contract between the parties; (2) consideration; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) that plaintiff was damaged by the breach." *Ice Corp. v. Hamilton Sundstrand Inc.*, 444 F. Supp. 2d 1165, 1169 (D. Kan. 2006).

As a basis for the breach-of-contract claim, the amended complaint states that Textron and Tsumpes—who later assigned to Seaguard—entered the APA and its various amendments. Doc. 31 at ¶¶ 8, 25. Textron alleges Tsumpes paid several deposits and that the APA required the final deposit payment of $400,000 to be paid by January 24, 2025. *Id.* ¶ 11, 13, 18, 27. Defendants did not pay the final deposit, either by that deadline or at the time of delivery of the aircraft. *Id.* ¶ 29. The delivery date was April 30, 2025 *Id.* ¶ 31. But Defendants said they would not take delivery on that date. *Id.* ¶ 32. Textron contends that Defendants are therefore in pre-delivery breach under Article 6(a) of the APA. *Id.* ¶ 33.

Defendants argue Textron cannot meet the first element of a breach-of-contract claim because the APA is not binding because the deposit was not paid in full. This is based on Article 3.a. of the APA, which states: "When Purchaser signs and returns this Agreement to Seller it will also pay to seller the Initial Deposit specified in Part 1. Unless and until Seller receives and accepts the Initial Deposit and Seller signs this Agreement as set out in Article 21, this Agreement is non-binding." Doc. 24 at 8. Article 21 of the APA further states:

> If (i) the Agreement has not been signed by both parties and (ii) Seller has not received and accepted the Initial Deposit on or before the Expiration Date, this Agreement may be modified or withdrawn. Nonetheless, when the Agreement has been signed by Purchaser and Seller has finally signed the Agreement in Kansas and received and accepted the Initial Deposit as set out in Article 3.a, then there will be a binding agreement per the terms of the signed document. Until this Agreement becomes a binding contract, the Aircraft may be sold to another customer.

*Id.* at 15. Because only $1,100,000 of the $1,500,000 deposit has been paid, Defendants contend they are not bound by the APA. Doc. 43 at 13.

Textron responds that non-payment of the deposit only renders the APA non-binding to the extent that the APA can be modified or withdrawn or to the extent Textron can sell the aircraft

to another customer, per Article 21. Doc. 49 at 5-6, 12-13. Further, failure to make "any payment" constitutes a "pre-delivery breach" of the APA under Article 6(a). *Id.* at 6. That provision goes on to state that "[i]n the event of any pre-delivery breach," Textron "is entitled to retain all paid deposits and to receive from Purchaser all remaining deposits due at the time of Purchaser's breach." Doc. 24 at 10. Textron contends that the argument that the APA is not binding until the deposit is paid in full would render many of these provisions of the APA illusory, ignores the agreement as a whole, and would vitiate the purpose of the APA. Textron also argues that the parties' course of conduct demonstrates that Defendants intended the APA to be binding and enforceable. Doc. 49 at 6-7.

Ultimately, the parties dispute several different terms of the APA, how those terms relate to other provisions in the APA, and the parties' course of conduct. Those disputes cannot be resolved on a motion to dismiss. The Court finds Textron has otherwise plausibly alleged a breach-of-contract claim. Defendants' motion on this point is denied.

### 2.    Performance

Defendants next move to dismiss the breach-of-contract claim because Textron did not plead its performance under the APA. *See Ice Corp.*, 444 F. Supp. 2d at 1169 (listing as an element "the plaintiff's performance or willingness to perform in compliance with the contract").

The amended complaint alleges that the delivery date was April 30, 2025, that Textron presented "the Aircraft in a Ready for Delivery condition as defined by the Agreement," that Defendants told Textron they would not take delivery of the aircraft, and that Textron gave Defendants the opportunity to cure. Based on this, Textron alleges it fully performed its obligations under the APA. *See* Doc. 31 at ¶¶ 31-34.

This is sufficient to survive a motion to dismiss. Defendants argue Textron was required to plead that there were no material discrepancies in the aircraft and that it was ready for delivery in the "Fourth Quarter 2024" as the APA required.[10] If Defendants believe that Textron did not adequately perform under the APA, then they can assert that defense. But Textron was not required to pre-emptively plead around that defense. Textron sufficiently pleaded performance under the APA. The motion is denied on this point.

### 3.    Declaratory Judgment

Defendants move to dismiss the declaratory judgment claim against Tsumpes "because Textron fails to allege what ongoing obligations it seeks to impose on Tsumpes despite the assignment to Seaguard under Amendment 4 to the APA." Doc. 43 at 15. Defendants contend that Amendment No. 4 limits Tsumpes' ongoing liability to damages only. *Id.* at 16.

This argument is not entirely clear or developed.[11] Amendment No. 4 states that if Seaguard "does not fully and completely perform all obligations of [Tsumpes] under the Agreement, then . . . [Seaguard and Tsumpes] are both jointly and severally responsible for any and all damages arising from any breach of the Agreement and [Textron] may pursue both or either party for full satisfaction." Doc. 24 at 26. Textron's declaratory judgment claim seeks a declaration about its rights under the APA, including that Defendants are jointly and severally liable for the unpaid damages. This extends to the unpaid $400,000 deposit, but it also relates to Textron's request that

---

[10]  Defendants argue that the aircraft was supposed to be ready for delivery by the "Fourth Quarter 2024" per the terms of the APA. Doc. 43 at 14. The APA does list the "Fourth Quarter 2024" as the "Ready for Delivery" date, though it also notes that if the "a Ready for Delivery month or quarter is identified, Seller will notify Purchaser of the Ready for Delivery Date by letter . . . ." Doc. 24 at 4. The amended complaint also alleges that the parties were still amending the APA well after the "Fourth Quarter 2024," and that the full deposit had not been paid through early 2025 at least. Although Defendants contend there is "no contractual basis" for the allegation that the delivery date was changed to April 30, 2025, *see* Doc. 43 at 15, the court must resolve all factual disputes in Textron's favor at this stage.

[11]  The Court notes Defendants change tack in their reply and only briefly argue that the declaratory judgment claim fails because the APA is not binding. Doc. 53 at 5. This argument has been rejected.

the Court declare that it is entitled to retain the deposits that were paid. Doc. 31 at ¶ 42. At a minimum, these allegations seem to reach Tsumpes under the APA post-assignment. This is sufficient to state a claim at this stage. What, if any, declaratory relief Textron can ultimately get will be decided at a later date.

### C.        Motion to Strike

Defendants separately move to strike Textron's withdrawal of a jury demand. Doc. 44. Textron demanded a jury trial when it filed this case. Doc. 3. Textron later amended its complaint. Doc. 31. Shortly thereafter, it filed a Notice of Withdrawal of Demand for Jury Trial. Doc. 36. The notice states that Textron was withdrawing the request because the APA waives the right to a jury trial. *Id.*; *see also* Doc. 24 at 12.

Defendants seek to strike that withdrawal because Textron did not get the consent of all parties under Rule 38. *See* Fed. R. Civ. P. 38(d) ("A proper demand may be withdrawn only if the parties consent."). Textron responds that the original jury demand was not a proper jury demand under Rule 38 because the parties waived the right to a jury trial under the APA. Thus, Defendants' consent to withdraw the demand was not needed.

The Court denies the motion to strike. Other courts have agreed that a jury demand is not "proper" where a contractual jury waiver exists. *See Westminster Sec. Corp. v. Uranium Energy Corp.*, 255 F. Supp. 3d 490, 497 (S.D.N.Y. 2017) ("Here, the jury demand was not 'proper' because of the contractual jury waiver."); *see also Tetra Fin. Grp., LLC v. Cell Tech Intern, Inc.*, 2009 WL 3818373, at *5 (D. Utah 2009). Defendants don't meaningfully engage with this argument, other than to reiterate their position that the APA is not binding and therefore the jury waiver is not enforceable. But as discussed above, that remains an open issue.

14

For the first time in their reply, Defendants argue that the jury waiver in the APA is invalid because it was not knowing and voluntary, lacked conspicuousness, and was the result of unequal bargaining power. Doc. 50 at 2-3. It also contends that Textron waived the right to assert the jury waiver provision in the APA because it initially filed a demand for a jury trial. *Id.* at 3-5. These may be issues the Court considers at some point. *See Little v. Gray Media Grp., Inc.*, 717 F. Supp. 3d 1058, 1061-62 (D. Kan. 2024) (discussing contractual waiver of a jury trial). But the Court is disinclined to do so based on arguments raised for the first time in a reply brief.

Ultimately, there is no prejudice to Defendants by allowing Textron to withdraw its jury demand. Defendants still have not answered, and to the extent they believe this matter should be tried by a jury, it would seem they could still assert that right. As the case progresses and things become clearer, the parties can revisit this issue. But this case is still relatively young, and neither side will be prejudiced by delaying resolution of this question until the enforceability of the APA and its provisions can be decided. The motion to strike is therefore denied without prejudice.

## IV.    CONCLUSION

THE COURT THEREFORE ORDERS that Defendants' Motion to Dismiss (Doc. 42) is DENIED.

THE COURT FURTHER ORDERS that Defendants' Motion to Strike (Doc. 44) is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: April 14, 2026                     /s/ *Holly L. Teeter*
                                          HOLLY L. TEETER
                                          UNITED STATES DISTRICT JUDGE