## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| TEXTRON AVIATION INC., | | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:25-cv-01088 |
| | § | |
| | § | |
| | § | |
| WILLIAM TSUMPES, | § | |
| and | § | |
| SEAGUARD AVIATION, LLC, | § | |
| Defendants. | § | |

### DEFENDANTS AND COUNTER-PLAINTIFFS' ANSWER
### TO PLAINTIFF'S AMENDED COMPLAINT AND COUNTERCLAIMS
### AGAINST PLAINTIFF AND COUNTER-DEFENDANT

Defendants William Tsumpes ("Tsumpes") and Seaguard Aviation, LLC

("Seaguard"), collectively ("Defendants") file their Answer to the Amended Complaint

("Complaint") filed by Plaintiff, Textron Aviation Inc. ("Textron").[1]

## PARTIES

1.    Defendants do not have sufficient knowledge to admit or deny the allegation

in Paragraph 1 of the Complaint, and therefore Defendants deny same and hold Plaintiff

to its proof.

2.    Defendants admit the allegations of Paragraph 2 of the Complaint.

3.    Defendants admit the allegation in Paragraph 3 of the Complaint.

---

[1] Doc. 31, Am. Compl.

**JURSIDICTION AND VENUE**

4.    Defendants admit the Court has jurisdiction over the subject matter of this case, pursuant to 28 U.S.C. § 1332, as alleged in Paragraph 4 of the Complaint.

5.    Defendants deny the allegation made in Paragraph 5 of the Complaint.

6.    Defendants deny the allegation made in Paragraph 6 of the Complaint.

**GENERAL BACKGROUND FACTS**

7.    Defendants admit the allegation in Paragraph 7 of the Complaint.

8.    Defendants deny the allegations in Paragraph 8 of the Complaint to the extent Plaintiff alleges the Aircraft Purchase Agreement ("APA") was entered into with Tsumpes, individually and to the extent it alleges the APA is a binding agreement. Textron had mistakenly identified Tsumpes as the Purchaser under the APA, but Tsumpes had signed as CEO and agent of Seaguard. Seaguard was the Purchaser under the APA. Defendants admit the date in which the APA was signed, and that the subject of the APA was the Citation CJ3 jet ("Aircraft") as alleged in Paragraph 8 of the Complaint.

9.    Defendants admit the allegations in Paragraph 9 of the Complaint to the extent they correctly state Article 6(b)'s language, but otherwise deny the allegations.

10.    Defendants admit the allegations in Paragraph 10 of the Complaint to the extent they correctly state Article 17's language, but otherwise deny the allegations.

11.    Defendants admit the allegations in Paragraph 11 of the Complaint, only to the extent the first initial deposit was made on May 1, 2024. Defendants deny the allegation in Paragraph 11 of the Complaint to the extent it claims Tsumpes made the first required deposit payment of $250,000.00. The payment was made by Seaguard, by and

through Tsumpes acting as CEO and agent of Seaguard. Defendants further deny the allegations made in Paragraph 11 of the Complaint to the extent they allege any payment was "required" under the APA or the amendments. The APA was never binding.

12.     Defendants admit the allegations made in Paragraph 12 of the Complaint to the extent the Complaint states a review of design options occurred in Kansas.  Defendants deny the allegations made in Paragraph 12 of the Complaint to the extent it claims Tsumpes traveled to Kansas in his individual capacity. Any travel to Kansas was as CEO and agent of Seaguard. Defendants admit that a confirmation email was received by Tsumpes, but would clarify that it was received as CEO and agent of Seaguard. All other portions of Paragraph 12 of the Complaint are denied.

13.     Defendants deny the allegations in Paragraph 13 of the Complaint.

14.     Defendants deny the allegations in Paragraph 14 of the Complaint to the extent they allege any action was taken by Tsumpes, individually. Defendants admit the remaining allegations in Paragraph 14 of the Complaint.

15.     Defendants admit the allegations in Paragraph 15 of the Complaint to the extent they state Amendment No. 1 sets the timing of a third initial deposit, to September 15, 2024 and that the third initial deposit payment was set to $750,000.00. Defendants deny the remaining allegations in Paragraph 15 of the Complaint to the extent that they allege "Tsumpes" owed any payment under the APA individually. Tsumpes was never required to pay any amount on the APA; it was always Seaguard, with Tsumpes signing the APA as CEO of Seaguard. Defendants deny Tsumpes signed the APA or the amendments in his individual capacity.

16. Defendants deny allegations in Paragraph 16 of the Complaint to the extent they allege Tsumpes was exchanging emails in his individual capacity. Defendants admit the remaining allegations made in Paragraph 16 of the Complaint.

17. Defendants deny the allegations made in Paragraph 17 of the Complaint to the extent they allege Tsumpes was a party to APA. Defendants further deny the allegations made in Paragraph 17 of the Complaint to the extent they allege any payment was "required" under the APA or the amendments. The APA was never binding. Defendants admit all other portions of Paragraph 17.

18. Defendants admit the allegations in Paragraph 18 of the Complaint to the extent that on September 25, 2024, Tsumpes, as CEO and agent of Seaguard, acknowledged an email related to past due notice. Defendants lack knowledge or information sufficient to form a belief as to whether on September 26, 2024 Textron emailed Tsumpes a Default Notice with a cure period, or a subsequent response was made by Tsumpes, therefore deny same and hold Plaintiff to its proof. Defendants admit the allegations made in Paragraph 18 of the Complaint to the extent Amendment No. 2 to the APA proposed installment payments of $350,000.00 due on September 27, 2024 and $400,000.00 due on November 25, 2024. Defendants deny the allegations made in Paragraph 18 to the extent they allege that Tsumpes made a payment of $350,000.00 on September 27, 2024. Seaguard made all payments to Textron.

19. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 19 of the Complaint, therefore Defendants deny same and hold Plaintiff to its proof.

20. Defendants deny the allegations made in Paragraph 20 of the Complaint to the extent they allege Tsumpes was a party under the APA, owed any "payment" under the APA, or signed as "himself." Defendants admit to the remainder of the allegations Paragraph 20 of the Complaint.

21. Defendants deny the allegations made in Paragraph 21 of the Complaint to the extent that they allege Tsumpes amended the APA and that Tsumpes owed any payments or that he signed as "himself." Defendants admit the allegations made in Paragraph 21 of the Complaint to the extent that it properly states the contents of Amendment No. 3.

22. Defendants deny the allegations made in Paragraph 22 of the Complaint to the extent they allege Tsumpes owed any deposit payment under the APA. Defendants admit the allegations made in Paragraph 22 to the extent the deposit payment was not made on November 25, 2024.

23. Defendants deny the allegations made in Paragraph 23 of the Complaint to the extent that they allege the APA was between Tsumpes and Textron or that Tsumpes took any of the actions described in his individual capacity. Defendants admit the allegations made in Paragraph 23 of the Complaint as to the past due notice, the request for an extension, and the extension that was granted.

24. Defendants deny the allegations made in Paragraph 24 of the Complaint to the extent they claim all events occurred when the APA was between Textron and Tsumpes, individually, and that Tsumpes was the sole purchaser of the Aircraft. Defendants lack knowledge or information sufficient to form a belief about the truth of

5

the allegations in Paragraph 24 of the Complaint, to the extent it claims no emails contained a signature block of Seaguard, therefore Defendants deny same and hold Plaintiff to its proof.

25. Defendants admit the allegations made in Paragraph 25 to the extent that, as subsequently recognized in Amendment No. 4, Seaguard was the entity responsible for any payments, and Tsumpes simply functioned as CEO and an agent for Seaguard. Defendants admit the allegations made in Paragraph 25 to the extent it restates the terms of Amendment No. 4. Defendants deny all other allegations, including any inference that Tsumpes traveled in his individual capacity to Textron's factory.

26. Defendants deny the allegations made in Paragraph 26 of the Complaint to the extent that the reference to "himself" was as Assignor was to correct Textron's mistake. Defendants deny the allegations made in Paragraph 26 of the Complaint that Tsumpes signed Amendment No. 4 in Kansas. . Defendants admit Amendment No. 4 was signed on February 25, 2025.

27. Defendants deny the allegations made in Paragraph 27 of the Complaint.

28. Defendants deny the allegations made in Paragraph 28 of the Complaint to the extent it alleges that Tsumpes was physically present in Kansas on February 25, 2025, or that he signed Amendment No. 5 while physically present in Kansas. Defendants admit all other allegations made in Paragraph 28 of the Complaint.

29. Defendants deny the allegations made in Paragraph 29 of the Complaint to the extent that they allege Tsumpes owed any final deposit payment under the APA. Defendants further deny the allegations made in Paragraph 29 of the Complaint to the

6

extent they allege any payment was "required" under the APA or the amendments. The APA was never binding. Defendants admit to the remainder of the allegations made in Paragraph 29 of the Complaint.

30. Defendants admit the allegations made in Paragraph 30 of the Complaint.

31. Defendants deny the allegations made in Paragraph 31 of the Complaint.

32. Defendants deny the allegations made in Paragraph 32 of the Complaint.

33. Defendants deny the allegations made in Paragraph 33 of the Complaint.

34. Defendants deny the allegations made in Paragraph 34 of the Complaint.

## COUNT ONE
### (Breach of Contract)

35. Defendants incorporate by reference the previous Paragraphs of this Answer as if set forth in full.

36. The allegations in Paragraph 36 of the Complaint constitute legal conclusions and arguments that do not require a response. To the extent a response is required, the allegations are denied.

37. The allegations in Paragraph 37 of the Complaint constitute legal conclusions and arguments that do not require a response. To the extent a response is required, the allegations are denied.

38. The allegations in Paragraph 38 of the Complaint constitute legal conclusions and arguments that do not require a response. To the extent a response is required, the allegations are denied.

39. The allegations in Paragraph 39 of the Complaint constitute legal

conclusions and arguments that do not require a response. To the extent a response is required, the allegations are denied.

**COUNT TWO**
**(Declaratory Judgment)**

40. Defendants incorporate by reference the previous Paragraphs of this Answer as if set forth in full.

41. The allegations in Paragraph 41 of the Complaint constitute legal conclusions and arguments that do not require a response. To the extent a response is required, the allegations are denied.

42. Defendants state the no response is required to the allegations in Paragraph 42 of the Complaint; accordingly, those allegations are denied. Fed. R. Civ. P. 8(b)(6).

**DEFENSES**

43. To the extent that any allegation to the Complaint has not been specifically admitted in the preceding Paragraphs, Defendants deny such allegations.

**AFFIRMATIVE DEFENSES**

44. Defendants give notice that they may rely upon the following affirmative defenses. By setting forth these defenses, Defendants do not assume the burden of proving any fact, issue, or element of a cause of action where such burden belongs to Textron. Defendants reserve the right to plead any and all affirmative defenses that may be evidence or appreciated after investigation and discovery in this matter.

45. For their first defense/affirmative defense Defendants state that Textron's suit must be dismissed because Textron fails to state a claim upon which relief can be

8

granted.

46.    For their second defenses/affirmative defense Defendants state that, Textron's suit must be dismissed because this Court lacks personal jurisdiction over Defendants.

47.    For their third defenses/affirmative defense Defendant, Defendants deny that Textron is entitled to relief because Textron cannot prove the essential element that a valid, enforceable contract existed between the parties.

48.    For their fourth defenses/affirmative defense Defendants state, if this Court should find a contract between the parties exists, which Defendants deny, Defendants deny Textron is entitled to relief because Textron had breached the contract prior to any alleged breach by Defendants.

49.    For their fifth defenses/affirmative defense Defendants state that, if a contract between the parties exists, which Defendants deny, Defendants deny Textron is entitled to relief because the contract was obtained through fraud, which involved Textron.

50.    For their sixth defenses/affirmative defense Defendants state, Textron made false representations with the specific intent to induce Defendants to enter into the APA. On or about April 26, 2024, Textron, through its employee Caleb Harshbarger, contacted Defendants through Tsumpes, while he was in Texas. At that time, Mr. Harshbarger fraudulently stated to Tsumpes that the APA's material provisions were identical to the Bell Helicopter agreement that Tsumpes had a previously signed.[2] This statement was

---

[2] Doc. 45-1, provisionally redacted, Corrected Exhibit A to Defendant's Memorandum in Support of Their Motion to Dismiss , at Exhibit 2.

fraudulent and knowingly false, with the intent of inducing Tsumpes to sign the APA. Mr. Harshbarger gave Tsumpes five minutes to read and execute the APA or risk losing the Aircraft to another competing buyer. Mr. Harshbarger said that "we only have 5 minutes to put your name on it before someone else grabs it."[3] Mr. Harshbarger then immediately sent Tsumpes a DocuSign APA to sign upon receipt.[4] Tsumpes, having only minutes to sign, and only operating from his cell phone, clicked through the document, signing each portion. This was a known false representation of the material provisions of the APA. In truth, the APA and the prior agreement differed on multiple essential terms including the parties to the agreement (Seaguard, rather than Tsumpes), choice of law provisions, jurisdiction clauses, payment details, guaranteed delivery date, and other essential terms.[5] This false representation was a statement of existing and material fact, was relied upon by Tsumpes, and was made by Textron, by and through Mr. Harshbarger, with the intent to induce Tsumpes to sign the APA on behalf of Seaguard. Textron and Mr. Harshbarger knew this representation to be false or made the statement recklessly without knowledge concerning it. Based on the limited time available, Tsumpes' trust in Mr. Harshbarger, the previous transaction, and the assurance that the material terms were identical to that previous transaction, Tsumpes' reliance was reasonable. As a result of this reliance, Defendants suffered extensive damages.

51.     For their seventh defenses/affirmative defense Defendants relied on the

---

[3] Doc. 45-1, provisionally redacted, Corrected Exhibit A to Defendant's Memorandum in Support of Their Motion to Dismiss, at ¶14.
[4] *Id.*
[5] *Id.*

false representations from both Mr. Harshbarger and the terms of the APA, made on April 26, 2024, indicating that the delivery of the Aircraft would be completed by the "Fourth Quarter of 2024."[6]Among the parties, this was known to mean no later than December 31, 2024. Textron, by and through Mr. Harshbarger and the APA, made this false representation with the specific intent to induce Defendants to sign the APA on behalf of Seaguard, knowing Defendants required the Aircraft to be delivered and signed over to Seaguard prior to the end of 2024. Textron, by and through Mr. Harshbarger and the APA, made this representation knowing it could not be done. Defendants reasonably relied on these false representations and sustained substantial damages in the form of the bonus depreciation deductions for tax year 2024 that Defendants were assured by Textron could have been obtained, but ultimately did not receive.

52.     For their eighth defenses/affirmative defense Defendants state that, if an agreement between the parties exists, which Defendants deny, Textron should be estopped from suing on the contract. Textron made a misrepresentation of material fact, by and through Mr. Harshbarger, when he stated the APA was identical to the Bell Helicopter agreement. Defendants lacked the knowledge of the truth of this statement and were unable to confirm it, because of the five-minute time frame in which Textron gave Defendants to review the APA. Textron intended to cause Defendants to rely on this misrepresentation. Defendants actually relied on this misrepresentation to Defendant's detriment.

---

[6] Doc. 24, provisionally sealed, APA at 4.

53.    For their ninth defenses/affirmative defense Defendants state that, if an agreement between the parties exists, which Defendants deny, Defendants were discharged from performing the remainder of the contract due to the non-completion of a condition precedent. Payment of the "Initial Deposit" was a condition precedent to performance under the APA. By providing that the APA is not "binding" until the Purchaser pays the Initial Deposit, the occurrence of that condition would be within the Purchaser's discretion. Therefore, the Purchaser's obligation to perform under the APA would never have been triggered, and Defendants would have never had an obligation to make any payments and thus did not breach an obligation to pay an additional $400,000.00 or provide any other continued obligations. The failure of the condition precedent to the formation of the APA, precludes any alleged breach of contract.

54.    If an agreement between the parties exists, which Defendants deny, Textron is not entitled to relief because the liquidated damages clause is unconscionable.

55.    If an agreement between the parties exists, which Defendants deny, enforcement of the agreement is barred by the doctrine on unconscionability, because the terms of the APA are unconscionable.

56.    If an agreement between the parties exists, which Defendants deny, Textron is not entitled to relief because relief would result in an unjust enrichment of Textron.

## **JURY DEMAND**

57.    Defendants hereby demand a jury trial on all contested issues of fact.

## PRAYER

Defendants pray that Plaintiff, Textron's Amended Complaint against each party be dismissed at Plaintiff's costs, that Defendants recover their costs and attorneys' fees, and that the Court grant all other and further relief, both special and general, at law and in equity, to which Defendants may show themselves justly entitled.

## COUNTERCLAIMS

Defendants and Counter-plaintiffs, William Tsumpes ("Tsumpes") and Seaguard Aviation, LLC ("Seaguard"), (collectively "Defendants" or "Counter-plaintiffs") hereby assert counterclaims against Plaintiff and Counter-defendant, Textron Aviation Inc., as follows:

## PARTIES

1.     William Tsumpes is an individual and a citizen of Texas.

2.     Seaguard Aviation, LLC, is a Montana limited liability company with its principal place of business in Kalispell, Montana with operations in Houston, Texas. Seaguard Aviation, LLC, is incorporated in the state of Montana and operates under the laws of Montana.

3.     Textron Aviation Inc. is a Kansas corporation with its principal place of business in Kansas.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this suit pursuant to 28 U.S.C. § 1332(a), because complete diversity exists between Counter-plaintiffs and the Counter-defendant as set forth herein, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      Counter-plaintiffs assert these compulsory counterclaims subject to and without waiving their dispute to personal jurisdiction and, as applicable, in the alternative to the defenses asserted in their Answer to Plaintiff's Amended Complaint or asserted elsewhere by Counter-plaintiffs in opposing Plaintiff and Counter-defendant's claims.

## FACTS COMMON TO ALL COUNTS

6.      On or about May 23, 2024, Counter-plaintiff Seaguard and Counter-defendant Textron signed an Aircraft Purchase Agreement ("APA") for the purchase of an aircraft (the "Aircraft").[7] Intending to purchase the Aircraft as an agent and for the exclusive use of Seaguard, Tsumpes (CEO of Seaguard Aviation, LLC) wet-signed Exhibit 1 to the APA, "End User Certificate," under the title "CEO" and under the name "Seaguard Aviation."[8]

7.      The purpose of signing the APA on behalf of Seaguard was to take advantage of bonus depreciation deductions for tax year 2024.[9] The IRS required that the delivery of the purchased aircraft occur prior to December 31, 2024 in order to take

---

[7] Doc. 31, Am. Compl. ¶ 8.
[8] *Id.*¶ 12; Doc. 24, provisionally sealed, APA at p. 15; *see* Ex. A, Tsumpes Decl. ¶ 15.
[9] Doc. 45-1, provisionally redacted, Corrected Exhibit A to Defendant's Memorandum in Support of Their Motion to Dismiss ¶ 20.

advantage of the bonus depreciation deductions.[10] Textron had always been aware of this.[11] Textron and its sales representative, Caleb Harshbarger, had actual knowledge of this deadline and the significant financial harm failing to meet the deadline would cause Seaguard and Tsumpes.

8.      Seaguard had concurrently contracted with Textron's helicopter division for the purchase of a Bell Helicopter to take advantage of the bonus depreciation.[12] That transaction was completed without incident. In that dealing, Textron and its representatives correctly recognized Seaguard as the purchaser and understood the time-sensitive nature of the transaction. Tsumpes signed the APA in Texas under his title "CEO," showing his intention to sign as CEO of Seaguard.[13]

9.      On May 1, 2024, Seaguard made the First Partial Initial Deposit specified by the APA in the amount of $250,000.00.[14] This represented the first installment of the total $1,500,000.00 "Initial Deposit" required for the APA to become effective.[15]

10.       On June 14, 2024, Seaguard made a Second Partial Initial Deposit payment of $500,000.00.[16]

11.      On September 27, 2024, Seaguard made a Third Partial Initial Deposit payment of $350,000.00 after mutually agreed upon changes that would make the basis of

---

[10] *Id.*. ¶ 9.
[11] *Id* . ¶ 20.
[12] *Id.*, at Exhibit 2.
[13] Doc. 31, Am. Compl. ¶ 8; Doc. 24, provisionally sealed, APA at p. 13; *see* Ex. A, Tsumpes Decl. ¶ 14, 15.
[14] Doc. 31, Am. Compl. ¶ 11; *see* Ex. A, Tsumpes Decl. ¶ 15.
[15] Doc. 24, provisionally sealed, APA at p. 3, Arts. 3(a), 21.
[16] *Id.* at ¶ 18, APA Amendment No. 1 ("$500,000.00 - Second Partial Initial Deposit due on May 24, 2024 - Received on June 14, 2024").

Amendments No. 1 and No. 2.[17]

12.    On October 30, 2024, upon discovery of Textron's mistake in naming Tsumpes personally as the purchaser under the APA, Tsumpes emailed Textron agents reminding them the actual purchaser was to be Seaguard.[18] Textron did not remedy its mistake at that time.

13.    On or about October 31, 2024, the parties signed Amendment No. 2 and Amendment No. 3 which, among other things, revised the sales allowance and added detailed configuration requirements including "CJ4 Gen 2 Seats to replace STD seats, Quilted Seats, Gogo Advance L3 Max Internet with Cockpit On/Off Switch, Two-Tone/ Split Base/ Complex Exterior" and other items promised by Textron.[19]

14.    Per the APA, the time the Aircraft was "Ready for Delivery" was to occur in the "Fourth Quarter of 2024."[20] The "Delivery Date[s]" was to "occur within three (3) calendar days after the "Ready for Delivery Date."[21] Neither the APA nor Amendments Nos. 1–5 changed the delivery date of the Aircraft.[22]

15.    This delivery date was a material representation made to Counter-plaintiffs, used to induce Seaguard into signing the APA. Both parties understood that $8,500,000.00 in bonus depreciation was on the line. Delivery needed to occur before December 31, 2024.

---

[17] Doc. 31, Am. Compl. ¶ 15, 17, 18; *see* Ex. A, Tsumpes Decl. ¶18.

[18] Doc. 45-1, provisionally redacted, Corrected Exhibit A to Defendant's Memorandum in Support of Their Motion to Dismiss  ¶ 21.

[19] Doc. 31, Am. Compl. ¶ 19, 21; Doc. 24, provisionally sealed, APA at Amendment No. 3.

[20] Doc. 24, provisionally sealed, APA at p. 1.

[21] *Id.* at p. 4.

[22] *Id.*  at Amendment Nos. 1–5.

16.     Subsequently, Textron failed to deliver the Aircraft during the fourth quarter of 2024 as prescribed by the APA.

17.     On or about January 24, 2025, Textron sent to Tsumpes draft Amendments No. 4 and Amendment No. 5, with Amendment No. 4 to be an assignment document, to correct Textron's earlier error on the proper party to APA, and Amendment No. 5 to add options to the Configuration and adjust a payment due date.  Without any notice or discussion, without the approval of Defendants, Textron also concealed in Amendment No. 5 a material change to the APA, an alteration of the delivery date of the aircraft, in an attempt to cure Textron's default and potential financial damage for failure to timely deliver the aircraft.  Tsumpes discovered the material change and called it to Textron's attention and Amendment No. 5 was revised to remove the language.

18.     The parties signed Amendment No. 4 and the corrected Amendment No. 5, with Amendment No. 4 assigning the APA from Tsumpes to Seaguard to formally correct Textron's mistake of naming Tsumpes individually as the Purchaser under the APA.[23] In attempting to correct their previous error in naming Tsumpes personally, the title "himself" was erroneously used by Textron and its contract staff, not by Tsumpes.[24]

19.     Finally, as Textron recognizes, Tsumpes signed Amendment No. 5 on behalf of and as a representative of Seaguard.[25]

20.     At this point, the total deposit paid was $1,100,000.00—$400,000.00 less

---

[23] Doc. 31, Am. Compl. ¶ 25; Doc. 24, provisionally sealed, APA at Amendment No. 4; *see* Doc. 45-1, Corrected Exhibit A to Defendant's Memorandum in Support of Their Motion to Dismiss  ¶¶ 21, 22, 24.

[24] Doc. 31, Am. Compl. ¶¶ 20, 21, 26; *see* Doc. 45-1, Ex. A, Corrected Exhibit A to Defendant's Memorandum in Support of Their Motion to Dismiss ¶ 25.

[25] *Id.*  ¶ 28.

17

than the $1,500,000.00 needed for the APA to be binding.[26]

21.     Textron alleges claims for breach of contract and declaratory judgment against Counter-plaintiffs.[27] The breach of contract claim is based on the allegation that Seaguard failed to take delivery of the Aircraft and failed to make a final installment payment of $400,000.00.[28]

22.     Textron also makes a claim for declaratory judgment against Tsumpes as to "continuing obligations," notwithstanding the assignment of the APA from Tsumpes to Seaguard.[29]

23.     In reality, the APA never became binding. The APA is not binding unless the "Initial Deposit" has been received and accepted.[30] The "Initial Deposit" is the total $1,500,000.00.[31] Because Textron has not "received and accepted the Initial Deposit as set out in Article 3.a,"[32] the APA is not binding on its own terms. Further, the APA cannot be binding because it was induced through fraudulent statements of Textron's representatives.

24.     As applicable, Counter-plaintiffs assert these counterclaims in the alternative to the defenses asserted in their Answer to Plaintiff's Amended Complaint or asserted elsewhere by Counter-plaintiffs in opposing Plaintiff and Counter-defendant's claims.

---

[26] *Id.* .¶¶ 11, 13, 18, 22, 29, 42.

[27] *Id.* ¶¶ 35–42.

[28] *Id.* .¶¶ 35–39; Doc. 24, provisionally sealed, APA at 9, Art. 4.b.

[29] Doc. 31, Am. Compl. ¶¶ 40–42; Doc. 24, provisionally sealed, APA at Amendment No. 4.

[30] Doc. 24, provisionally sealed, APA at p. 8, Art. 3.a, p. 15, Art. 21.

[31] *Id.* at p. 6.

[32] *Id.* at p. 15, APA at Art. 21.

## COUNT I – FRAUD IN THE INDUCEMENT

25.     Counter-plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 24 above as if fully set forth herein.

26.     Textron made false representations with the specific intent to induce Counter-plaintiffs to enter into the APA. On or about April 26, 2024, Textron, through its employee Caleb Harshbarger, contacted Counter-plaintiffs through Tsumpes, while he was in Texas. Mr. Harshbarger gave Tsumpes five minutes to read and execute the APA or risk losing the Aircraft to another competing buyer. Mr. Harshbarger said that "we only have 5 minutes to put your name on it before someone else grabs it."[33] Mr. Harshbarger then immediately sent Tsumpes a DocuSign APA to sign upon receipt.[34] Tsumpes, having only minutes to sign, and only operating from his cell phone, clicked through the document, signing each portion. At that time, Mr. Caleb Harshbarger fraudulently stated to Tsumpes that the APA's material provisions were identical to the Bell Helicopter agreement that Tsumpes had a previously signed.[35] This statement was fraudulent and knowingly false, as to essential terms including the parties to the agreement (Seaguard, rather than Tsumpes), choice of law provisions, jurisdiction clauses, and other essential terms, with the intent of inducing Tsumpes to sign the APA.

27.     This was a known false representation of the material provisions of the APA. In truth, the APA and the prior agreement differed on multiple essential terms including

---

[33] Doc. 45-1, provisionally redacted, Corrected Exhibit A to Defendant's Memorandum in Support of Their Motion to Dismiss , at Exhibit 2.
[34] *Id.*
[35] Doc. 45-1, provisionally redacted, Corrected Exhibit A to Defendant's Memorandum in Support of Their Motion to Dismiss , at Exhibit 2.

provisions for choice of law provisions, jurisdiction clauses, payment details, guaranteed delivery date, and other essential terms. [36]

28.     This false representation was a statement of existing and material fact, was relied upon by Tsumpes, and was made by Textron, by and through Mr. Harshbarger, with an intent to induce Tsumpes to sign the APA on behalf of Seaguard. Textron and Mr. Harshbarger knew this representation to be false or made the statement recklessly without knowledge concerning it. Based on the limited time available, Tsumpes' trust in Mr. Harshbarger, the previous transaction, and the assurance that the material terms were identical to that previous transaction, Tsumpes' reliance was reasonable. As a result of this reliance, Counter-plaintiffs suffered extensive damages.

29.     Further, Counter-plaintiffs relied on the false representations from both Mr. Harshbarger and the terms of the APA, made on April 26, 2024 indicating that the delivery of the Aircraft would be completed by the "Fourth Quarter of 2024."[37] Among the parties, this was known to mean before December 31, 2024. Textron, by and through Mr. Harshbarger and the APA, made these false representations as statements of existing and material fact and with the specific intent to induce Tsumpes to sign the APA on behalf of Seaguard, knowing Counter-plaintiffs required the Aircraft to be delivered and signed over to Seaguard prior to the end of 2024. Textron, by and through Mr. Harshbarger and the APA, made this representation knowing it could not be done, or at the least, recklessly without the knowledge that it could be done. Counter-plaintiffs reasonably relied on these

---

[36] *Id.*
[37] Doc. 24, provisionally sealed, APA at 4.

false representations and sustained substantial damages in the form of the bonus depreciation deductions for tax year 2024 that Counter-plaintiffs were assured by Textron could have been obtained, but ultimately did not receive.

30.    These false representations caused substantial injury to Counter-plaintiffs. The fraudulent acts giving rise to this cause of action and the injury resulting from it were not reasonably ascertainable until at least sometime after the execution of the APA. The injury was not ascertainable to Counter-plaintiffs at least until Tsumpes learned of Textron's inability to deliver the Aircraft during the 2024 year.

31.    Further, and in the alternative, Textron engaged in fraudulent concealment. Textron engaged in affirmative acts of concealment when, through its representatives, it knew that the previously agreed Bell helicopter agreement and the APA were not, in relevant part, identical and that the Aircraft could not be delivered in December of 2024. Textron failed to relay this to Counter-plaintiffs even after known, for the specific purpose of keeping Counter-plaintiffs in the contract. Counter-plaintiffs could not have known of the fraud at the time of signing due to the five-minute limitation placed on Tsumpes to sign. No reasonable diligence could have rooted out these misrepresentations.

32.    Tsumpes' reliance on Textron's false representations was reasonable and justified under the circumstances. Tsumpes had no reason to doubt the veracity of the Textron salesman's, Mr. Harshbarger's, representations because Tsumpes was informed by Mr. Harshbarger that he had previously worked for Bell Helicopter, Tsumpes held him in a position of trust, and Mr. Harshbarger was a person with superior knowledge. Moreover, the veracity of the representations was not readily verifiable by Tsumpes under

the circumstances of being required to review the APA in five minutes.

33.     As a direct and proximate result of Textron's fraudulent inducement of Counter-plaintiffs to sign the APA, Counter-plaintiffs have suffered actual damage caused by this act, court costs, attorneys' fees, and punitive or exemplary damages under Kansas law.

34.     Counter-plaintiffs seek the out-of-pocket costs, the benefit of the bargain damages in the form of the initial deposits paid towards the APA, and the consequential damages arising from the fraudulent inducement described above.

## COUNT II – NEGLIGENT MISREPRESENTATION

35.     Counter-plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 34 above as if fully set forth herein.

36.     Textron, in the course of the transaction relating to the APA, in which it had a pecuniary interest, supplied false information for the guidance of the Counter-plaintiffs. Specifically, Textron, by and through its salesman, Mr. Harshbarger, supplied the false information that the APA's material provisions were identical to the Bell Helicopter agreement that Tsumpes had a previously signed and that the delivery of the Aircraft would be completed by December 31, 2024.

37.     Textron, by and through Mr. Harshbarger, failed to exercise reasonable care or competence in obtaining or communicating that false information. The Counter-plaintiffs relied upon that false information and were the parties for whose benefit and guidance Textron and Mr. Harshbarger supplied the information.

38.     As described above, Counter-plaintiffs justifiably relied on this false

information and suffered pecuniary loss as a result of this reliance.

39.     The Counter-plaintiffs suffered damages in the transaction relating to the APA, the transaction that Textron and Mr. Harshbarger intended to influence by supplying the false information.

40.     Counter-plaintiffs seek damages necessary for the pecuniary loss to him of which the misrepresentation was the legal cause including pecuniary loss suffered as a consequence of the misrepresentation.

## COUNT III – BREACH OF CONTRACT

41.      Counter-plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 40 above as if fully set forth herein.

42.     Counter-plaintiffs dispute that any contract existed between the parties. Nonetheless, and in the alternative, to the extent that this Court may find a contract exists and that both Tsumpes and Seagaurd are parties to the APA, Textron has breached the contract.

43.     Should this Court find a contract exists, then per the terms of the APA, Textron agreed to sell and deliver an aircraft, a "good" as defined by K.S.A. § 84-2-105, conforming to certain specifications, including but not limited to certain design, material , and configuration requirements,  by an agreed delivery date.[38] These provisions were material terms to the contract and induced Counter-plaintiff Seaguard to execute the APA. Textron was informed, both before and after execution of the APA, verbally and in written

---

[38] Doc. 24, provisionally sealed, APA at 4. ("Fourth Quarter of 2024").

23

communications, that the delivery of the purchased aircraft needed to occur prior to the December 31, 2024 deadline and in the name of Seaguard Aviation, LLC, due to an IRS requirement that the aircraft be placed into service no later than the end of the calendar year. The APA was always understood to be executed in the name of Seaguard Aviation, LLC, for Seaguard Aviation, LLC to be able to take advantage of the more than $8,500,000 in IRS bonus depreciation as a 2024 tax deduction.

44.    Sufficient consideration was exchanged to support this contract in the form of the parties' mutual promises to each other and of the deposit payments made by Seaguard. These deposits were made in exchange for a conforming aircraft, delivered within the time specified by the agreement.

45.    Counter-plaintiffs fully performed all material obligations required under the contract as evidenced by the deposits made on the APA and were willing to continue performance, but for Textron's breach.

46.    Textron breached the contract by failing to deliver a conforming aircraft by the December 31, 2024 deadline, causing substantial financial harm to Counter-plaintiffs. Further, even after the deadline had passed, Textron continued to display an inability and unwillingness to deliver the Aircraft as specified in the APA and its amendments. In addition, Textron ultimately failed to deliver an aircraft without a material Discrepancy as required by Article 4(b) of the APA.

47.    As a direct and proximate result of Textron's breach of the APA, Counter-plaintiffs have suffered damages and request damages, court costs, attorneys' fees,

24

punitive or exemplary damages, and all other damages Counter-plaintiffs may be rightly entitled to.

## COUNT IV – UNJUST ENRICHMENT

48. Counter-plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 47 above as if fully set forth herein.

49. In the alternative, Counter-defendant Textron has been unjustly enriched. Counter-plaintiff Seaguard conferred the benefit of $1,100,000.00 in partial deposit payments to Textron. Textron recognized these payments and has retained these payments.[39] Textron also retained the Aircraft that is the subject of suit and sold the Aircraft to another buyer. Accordingly, under the circumstances it is clearly inequitable for Textron to retain the benefit of the $1,100,000.00 in partial deposit payments.

50. To the extent applicable, Counter-plaintiff Seaguard is entitled to the return of the $1,100,000.00 in partial deposit payments conferred onto Textron.

## ATTORNEYS' FEES AND EXPENSES

51. Defendant has been required to employ the undersigned law firm to prosecute this action and is entitled to recover its reasonable and necessary attorneys' fees.

---

[39] Doc. 31, Am. Compl. ¶¶ 7–35.

## PRAYER

Counter-plaintiffs request that the Court render judgment that Counter-defendant Textron take nothing on its claims against Counter-plaintiffs, grant judgment in favor of Counter-plaintiffs on their counterclaims, and grant Counter-plaintiffs their costs and all other relief to which they are justly entitled.

## JURY DEMAND

Counter-plaintiffs hereby demand a trial by jury on all issues triable by a jury.

Respectfully submitted,

**COOLING & HERBERS, P.C.**
/s/ *Elizabeth A. Vasseur-Browne*
Elizabeth A. Vasseur-Browne, 25170
COOLING & HERBERS, P.C.
2400 City Center Square
1100 Main Street
Kansas City, Missouri 64105
Tel: (816) 474-0770
Fax: (816) 472-0790
lbrowne@coolinglaw.com

Howard L. Close (*pro hac vice*)
TX State Bar No. 04406500
Randall C. Owens (*pro hac vice*)
TX State Bar No. 15380700
Armon A. Mehrinfar (*pro hac vice*)
TX State Bar No. 24124668
WRIGHT CLOSE BARGER & GUZMAN, LLP
One Riverway, Suite 2200
Houston, Texas 77056
Tel: (713) 572-4321
Fax: (713) 572-4320
close@wcbglaw.com
owens@wcbglaw.com
mehrinfar@wcbglaw.com

26

**ATTORNEYS FOR DEFENDANTS
WILLIAM TSUMPES AND
SEAGUARD AVIATION, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on this date, April 24, 2026, I electronically filed this document with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record, and that for any parties, I will serve copies of this document in accordance with Fed. R. Civ. P. 5 and applicable Local Rules.

Michael G. Jones, *Esq.*
Matthew A. Spahn, *Esq.*
MARTIN, PRINGLE, OLIVER,
WALLACE & BAUER L.L.P.
645 E. Douglas, Suite 100
Wichita, Kansas 67202
Tel. (316) 265-9311
Fax. (316) 265-2955
mgjones@martinpringle.com
maspahn@martinpringle.com
**ATTORNEYS FOR TEXTRON
AVIATION INC.**

/s/ *Elizabeth A. Vasseur-Browne__*
Attorney for Defendants
Elizabeth A. Vasseur-Browne, 25170
COOLING & HERBERS, P.C.
2400 City Center Square
1100 Main Street
Kansas City, Missouri 64105
lbrowne@coolinglaw.com
Tel: (816) 474-0770
Fax: (816) 472-0790
**ATTORNEYS FOR DEFENDANTS
WILLIAM TSUMPES AND
SEAGUARD AVIATION, LLC**